The next case on the calendar is E.D. Capital v. Bloomfield Investment Resources. E.D. Capital v. Bloomfield Investment Resources District Court improperly in assessing both the breach of contract and indemnification claims held that those claims failed because E.D. Capital allegedly did not plead a collateral contract under Cayman Island law, but we did. In the complaint, we allege that Bloomfield, the defendant's ear, and E.D. Capital entered into a collateral contract which was collateral to the subscription agreement and memorandum, and under Cayman Island law, that permits- Could you pause there for a second and just describe what the terms of the alleged collateral contract are? Sure. The terms of the- And highlight, please, how they're different from those of the subscription agreement. They are different from the subscription agreement in that they're between the E.D. Capital, which is not a party to the subscription agreement, and Bloomfield, and they relate to E.D. Capital's service as investment advisor and investment manager of the Synergy Funds, and the agreement by the defendants that E.D. Capital would serve in that role. It was just an agreement that E.D. Capital would serve as investment advisor, so there's no compensation terms or- I mean, didn't the subscription agreement contemplate that E.D. Capital would serve in that role? That was part of the whole arrangement. The subscription agreement did contemplate that, but E.D. Capital was not a party to the subscription agreement. Right, but so what about the substance of the alleged collateral contract is different from what is set forth in the subscription agreement? I gather you're saying what's different is that E.D. Capital's a party, but is there anything else that is- The aspect of their arrangements as to their service as an investment advisor, details as to certain of the fee arrangements beyond what's already in the subscription agreement and memorandum, but the primary, the collateral contract really is that E.D. Capital would serve in that role and that defendants had agreed to it, and that, for purposes of pleading, Your Honor, that's sufficient to allege that there's a collateral contract here that is- I still have difficulty understanding how that would be a collateral contract if that was already set out in the subscription agreement. The terms are, but it's collateral in the fact because E.D. Capital's not a party to the subscription agreement. Okay. So it- It almost sounds like the argument is that the collateral contract is that E.D. Capital will be a party to the subscription agreement or will be able to enforce the terms of the subscription agreement, and if that was what the parties wanted, it seems to me it would have been in the subscription agreement itself. So help me understand, because I thought when you're talking about these collateral contracts, that's one of the things you consider. Is this a term that would have been included in the subscription agreement? Your Honor, that is one issue that could be considered, but here the point really is that it's not in the contract. E.D. Capital here is not a party to the subscription agreement, but there is a contemplation of an agreement that they would serve in the role as investment advisor, and that is the separate contract which is consistent with the underlying subscription agreement, and that's the collateral contract. And that is pled. Now whether or not that's sufficient in terms of proof is not a pleading issue. And here, remember, we're at the pleading stage, and we're dealing with issues of what's been pled. And what's been pled here in the complaint is that there was a collateral contract sufficient with the requirements of Cayman Islands law. With regard to the promissory estoppel claim that was dismissed, which was pled in the alternative, the district court focused on the fact that the promises that were between the parties were evidenced in the subscription agreement and memorandum. But that in and of itself doesn't mean that there cannot be a promissory estoppel claim. The case that's relied on by the district court and as well as by the defendants, the dealt with a wholly distinct situation where the promises, the unambiguous promises or the promises required for promissory estoppel were not made to the parties who are serving the promissory estoppel claim. That case was separate in the sense that BNP in that instance was an assignee of the claims, and there's no mention of any promises to BNP in the contract which is asserted there in that case. So the fact that here the promises to E.D. Capital are contained within the subscription agreement and memorandum doesn't defeat a promissory estoppel claim. With regard to prima facie tort and abuse of process, the court focused on and held that E.D. Capital didn't allege that there was no justification for the conduct. Focusing in the first instance on an allegation that's not in the complaint, which is that E.D. Capital alleged that there was a profit motive behind the actions of the defendants. A, that's not in the complaint. But B, there are allegations in the complaint that there was no justification and that the justification at all with regard to the abuse of process and prima facie tort claims was to destroy E.D. Capital. And for purposes, again, of pleading, that is sufficient. Finally, with regard to the prejudgment attachment claim, the district court essentially just held because we didn't plead any of the other or allegedly failed to plead the other claims, there was no prejudgment attachment claim. But as we've set forth in our papers, we did satisfy the pleading requirements for all of our other claims, and therefore, the prejudgment attachment claim should stand as well. Unless the panel has any other questions, I will cede my time. Thank you. May it please the court. I'm Brian Sutherland for the Appalese. And Judge Carney asked the right question when your honor asked what are the terms of this alleged collateral contract. Because they don't appear in this complaint. It's impossible to tell what the terms of the alleged oral contract based on the complaint that you have before the court. And it's confusing, but there are a couple of possibilities. One is that which is alleged in paragraph 75 and 82, namely the idea that E.D. Capital agreed to serve as investment manager. And in return, Bloomfield would sign the subscription agreement. Well, if that's the theory, then there's no breach because Bloomfield did sign the subscription agreement. That subscription agreement, as my opponent just conceded, doesn't include E.D. Capital as a party. It says the same thing in paragraph 72, excuse me, 75 and 82. The other possible theory on which they might seek to proceed, it's not alleged in the complaint, but it seems to be what they're claiming. Is that the oral agreement and the written agreement are exactly the same, except that one has E.D. Capital as a party and one does not. And it would be hard to imagine a more clear violation of the collateral contract doctrine. What that doctrine does is it says, well, there's an exception to the parole evidence rule, where you can have an oral agreement and a written agreement, so long as the two are completely separate. Here, they're saying the opposite. They're saying they're exactly the same. And I think their expert witness, Neil Lupton, when confronted with this strange theory of theirs, said, well, that does seem to be what they're saying, because that's what he said. You'll see this on pages 412 to 413 of the record. He said, the collateral contract quote, essentially mirrors the terms contained within the subscription agreement. That's impossible. What you need is a collateral contract. That means separate. That means independent. The identity of the parties is something you would expect to find in the written agreement. Therefore, it cannot be the subject of an alleged oral agreement. This is not a question of fact. They agree that these written agreements exist. This is undisputed. And so when they say to the court, well, let's just push everything aside and think about whether there could be some oral agreement out there, that's not the point. The point is, are they making allegations that Bloomfield has violated the terms that are identical to the terms of the written agreement? This is not just information that you would expect to find in the written agreement. It's actually in the written agreement. So they're saying, well, we have this oral agreement, it includes all the terms of the written agreement, and you violated those terms. It's just an improper attempt to circumvent the Kalen Island Law, which provides that when a party, like E.D. Capital, is not a party to the written agreement, it has no right to enforce the terms of that agreement. You'll see that in our expert's declaration at page 185 of the record, and the statute to which she refers is at page 281. And a final point on this that I'll leave you with, E.D. Capital could have made itself a party to this contract if it had wanted to do that. It's the investment manager, as it says in the complaint, and it simply chose not to do it. It didn't want to have any liability to the investors. And it's now trying to make itself a party, but it cannot do so, and the face of the complaint shows that. The promissory estoppel claim fails for exactly the same reasons. It's just trying to enforce a written agreement to which it is not a party. Can't identify any case in which there is an undisputed written agreement that contains promises to a non-party. This is especially clear under Kalen Island's law. When you have a Kalen Island's contract, it is particularly clear that that contract doesn't make any promises to non-parties. Again, refer the court to page 281 of the record for that proposition. And I think what you see in their brief is an implicit concession of the point when they cite a case called Mendez. And they say, well, couldn't we plead the existence of a written contract, but then also in the alternative, plead promissory estoppel in case there is no written contract. Well, the only reason you could have that alternative claim would be if there is no written contract. That's the point Mendez makes. If you do have a written contract, you have no promissory estoppel claim. I understood them to be arguing that in part that Bloomfield in signing the subscription agreement delegated to ED Capital all investment decisions. That in entering the subscription agreement there was a delegation. And that is delegated investment decisions relating to synergy funds. And I was wondering, I understand them to be arguing that that is sufficient to provide a basis for a promissory estoppel claim. I take it you- I'm not saying that, but if they are, it's wrong. The subscription agreement doesn't make any promises to ED Capital. It does disclose that ED Capital will be the investment manager. That's an arrangement between the investment manager and the synergy funds. But, so you don't believe that provides an adequate basis to loop ED Capital in and give it grounds for pursuing Bloomfield? On what? On promissory estoppel grounds? Yeah. No, there can never be a promissory estoppel claim that's based on a contract to which the plaintiff is not a party. And I think the BMP Paribas case makes that clear. That is a Rule 12B6 dismissal. The first department's decision in Port Hall says essentially the same thing. That when there is a written contract, it doesn't make promises to non-parties. Especially under Cayman Law, contracts make promises to parties. They do not make promises to non-parties. That's the fundamental proposition. And so a contract could refer to someone else. It could seem to indicate that another entity will have some role to play. It doesn't matter though, because nothing in that subscription agreement or the private placement memorandum makes any promises to ED Capital. I hope that point is clear. Okay, I'll quickly then just turn to the tort claims. My colleague just mentioned prima facie tort. That one's particularly easy, because we have a New York Court of Appeals case, which is directly on point, which is the Curiano case. And what that case holds is a plaintiff can never, never bring a prima facie tort claim based on the institution of civil proceedings while those proceedings are ongoing. It says that right in the case. So it's just a matter of New York public policy. And the court can dismiss that one at the pleading stage as well. Now my colleague didn't separately address abuse of process, but I'll quickly touch on it. There is no abuse of process claim here for two reasons. One, ED Capital fails to allege any interference with person or property. And two, the complaint does show that there is an economic justification for this lawsuit. Is this to pressure ED Capital to buy back the Bloomfield investment? That's the language from the complaint. Right. That doesn't state a claim. There's a first department case directly on point for that. That one's called Beltramini, which says that if someone institutes a civil proceeding to doesn't constitute abuse of process as a matter of law. And in fact, going back to Curiano, Curiano also holds that commencing civil proceedings never constitutes abuse of process as a matter of law, so nothing that happened in the Netherlands could constitute abuse of process. There was an attachment there, but it was attachment of UMG's assets, and the complaint concedes that ED Capital didn't own UMG or its assets. And with respect to the proceedings in the Southern District of New York, there's no allegation of improper use of process. And in fact, the Southern District judge approved the 1782 application and granted the motion to compel the production of documents. The appropriate time to object or move for sanctions based on what Bloomfield did in the connection with the 1782 application would have been in the Southern District of New York. Instead of bringing the allegations here in this separate lawsuit. Which again, only say that what we've incurred legal fees, but don't allege improper use of process. In fact, the process was used for exactly the purpose that depositions and documents are intended under that statute as the district court held. Thank you, your honors. Your honors, with regard to the abuse of process, we cite cases to this effect in our papers. The issuance and use of subpoenas has been routinely held to be, to allege abuse of process. And that's what we alleged here. It's not just the case filed against UMG in the Netherlands. It is also, as counsel indicated, the use of the subpoenas in the United States. Which did cause, as we allege in the complaint, harm, economic and special damages to the ED Capital entities. With regard to BNP, the BNP case and the promissory estoppel issue. Again, that case, the focus in that case was on the existence of whether or not there are clear and unambiguous promises to BNP. There were not, because the underlying contract there and what they're relying on for their promises didn't mention BNP. And in fact, BNP had no relation to that contract because it was assigned to them. Thank you very much. Thank you both. We'll take it under advisement.